UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**BASS WEBB**                                                                                             **PLAINTIFF**

**v.**                                                               **CIVIL ACTION NO. 5:24-CV-P77-JHM**

**JASON DENNY** *et al.*                                                                       **DEFENDANTS**

**MEMORANDUM OPINION**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss this action.

**I.**

Plaintiff Bass Webb is incarcerated as a convicted prisoner at Kentucky State Penitentiary (KSP). He sues KSP Captain Jason Denny; KSP Sergeant Prinkey; former KSP Warden Scott Jordan; and Kentucky Department of Corrections Commissioner (KDOC) Cookie Crews. Plaintiff sues Defendants Denny, Prinkey, and Jordan in both their official and individual capacities; he sues Defendant Crews in her official capacity only.

Plaintiff makes the following allegations in the complaint:

On April 16, 2023, Sergeant Haley McFerrin utilized her institutional radio to report a "Medical Emergency in 7 Cell House." Sergeant McFerrin stated that, upon the reaching the cell of Plaintiff [], she suspected he was experiencing a diabetic emergency due to him being non-responsive.

Medical personnel was notified and Nurse Cassidy Eubanks responded by attempting to speak with Plaintiff [] who began screaming. Nurse Eubanks advised Sergeant McFerrin that "she would need to see [Plaintiff] outside of the cell." Sergeant McFerrin "verified that [Plaintiff] had no medical restrictions for the use of OC spray, vapor, or the Taser 7." Sergeant McFerrin then "called and briefed the shift supervisor on [Plaintiff] and requested permission to remove [Plaintiff] for medical assessment."

(DN 1-1).

Plaintiff alleges that Defendant Denny then retaliated against him when he instructed Sergeant McFerrin to "have all team members wear personal protective gear and nitrile gloves and to enter the cell with caution due to Plaintiff's violent history against staff." *Id*. Plaintiff also alleges that Defendant Prinkey "gave several orders to Plaintiff to 'back up to the door' but Plaintiff was unable to respond effectively due to him suffering from complications of his diabetic disease." Plaintiff continues, "Defendant Prinkey mistook Plaintiff's inability to respond effectively as a refusal to comply to the orders." Plaintiff states that Defendant Prinkey then "administered a burst of OC vapor into his cell, with malicious and sadistic intent to cause harm to the Plaintiff in retaliation for Plaintiff's violent history with staff.'" Plaintiff asserts that once he backed up to his cell door, mechanical restraints were placed on him, and he was taken to restraint chair where Nurse Eubanks took his blood sugar and determined that he needed liquid glucose. Plaintiff states that ten minutes after giving Plaintiff the liquid glucose, Nurse Eubanks check his blood sugar again and stated that it was safe for him to return to his cell.

As relief, Plaintiff seeks damages and transfer to another prison.

**II.**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting

3

under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Official-Capacity Claims

Plaintiff's official-capacity claims against Defendants are subject to dismissal. When state officials are sued in their official capacities for damages, they are not "persons" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for damages are not considered persons for the purpose of a § 1983 claim). Moreover, state officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when state officials are sued for damages in their official capacity."). Thus, Plaintiff's official-capacity claims for damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking damages from defendants who are immune from such relief.

Moreover, although injunctive relief may be sought from state officials in their official capacities in some instances, *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908), Plaintiff's request for injunctive relief fails because, as set forth below, the Court is dismissing all of Plaintiff's substantive claims.

### B. Individual-Capacity Claims

#### 1. Defendants Crews and Jordan

Because the complaint contains no allegations against Defendant Crews or Jordan, the Court assumes that Plaintiff seeks to hold them liable based upon their supervisory roles within Kentucky's prison system. However, the doctrine of *respondeat superior*, or the right to control

4

employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d 285, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Thus, because Plaintiff's individual-capacity claims against Defendants Crews and Jordan are not based on any active constitutional conduct, but rather on their supervisory roles within the KDOC and KSP, the claims must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims

Plaintiff asserts that Defendants Denny and Prinkey retaliated against him due to "his violent history against staff."

A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Berkshire v. Dahl*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012)).

Plaintiff's retaliation claims fail because behaving violently toward prison staff is not protected conduct. *See, e.g.*, *Parks v. Boyd*, No. 1:22-cv-41, 2022 U.S. Dist. LEXIS 63179, at *18 (E.D. Tenn. Apr. 5, 2022) ("Plaintiff provides no facts suggesting that his disciplinary history qualifies as protected conduct under the First Amendment . . . ."); *Fisher v. Cappel*, No. 2:13-cv-0642 AC P, 2013 U.S. Dist. LEXIS 87155, at *11 (E.D. Cal. June 19, 2013) ("'Retaliation' based on personal animosity or for an inmate's disciplinary history is not a constitutional claim cognizable under § 1983.").

Thus, the Court will dismiss Plaintiff's retaliation claims for failure to state a claim upon which relief may be granted.

### 3. Excessive-Force Claim

Finally, Plaintiff also seems to argue that Defendant Prinkey used excessive force against him when he sprayed a "burst of OC spray" into Plaintiff's cell after Plaintiff failed to comply with his repeated orders to back up to the cell door so that mechanical restraints could be placed on him.

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Although prison discipline may require that inmates endure relatively greater physical contact, the Eighth Amendment is nonetheless violated if the "offending conduct reflects an unnecessary and wanton infliction of pain." *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995) (internal alterations and quotation marks omitted). There is an objective component and a subjective component to an Eighth Amendment excessive-force claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The "subjective component focuses on the state of mind of the prison officials," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), and requires a court to ask "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Here, even if the Court assumes that a burst of OC spray could satisfy the objective component of the above standard, Plaintiff's allegations fail to satisfy the subjective component. Plaintiff himself states that Defendant Prinkey released the OC spray because he believed, albeit mistakenly, that Plaintiff was deliberately disobeying his direct order. Moreover, the complaint makes clear that this direct order was given so that Plaintiff could be extracted from the cell to receive urgent medical care. Thus, despite Plaintiff's assertions to the contrary, nothing in the complaint suggests that Defendant Prinkey used the OC spray maliciously, sadiciously, or with the intent to cause harm. *See, e.g., Jeter v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-cv-756, 2019 U.S. Dist. LEXIS 175068, at *18-19 (S.D. Ohio Oct. 9, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 23308 (S.D. Ohio Feb. 11, 2020) ("Multiple courts including the Sixth Circuit repeatedly have held that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order.") (collecting cases).

For these reasons, the Court will also dismiss Plaintiff's excessive-force claim for failure to state a claim upon which relief may be granted.

### IV.

The Court will enter a separate Order dismissing this action for the reasons set forth herein.

Date: August 23, 2024

*Joseph H. McKinley*
Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4411.011

7